as fiduciary and plan administrator of the National Elevator Health Benefit Plan v. Kyle J. Moore and others, arguing this night to exceed 15 minutes per side. Ms. Day for the appellants. Good morning. Good morning. May it please the court, my name is Stephanie Day and I am here to, and the counter is not going. We're again without a light. Okay, let's turn off. Reboot. On. And how much time for rebuttal will you need, ma'am? Five minutes, please. There it is. All right. May it please the court, my name is Stephanie Day. I'm here on behalf of the appellants, Kyle Moore and Goodson and Company. Preliminarily, appellants are asking this court to reverse the summary judgment decision of the district court because we believe there are genuine issues of material fact that exists for the trier effect. Because we believe that we have presented evidence in this case that the summary plan description that I'll refer to as the SPD was never adopted as the controlling plan document. And that the SPD could never be the controlling plan document because it doesn't comply with the ERISA statutory requirements. All right, so what is the controlling plan document if the SPD is not? There's never been any controlling plan document produced. And there is a controlling plan document that's required by ERISA. All right, so that means if there's no controlling plan document and there are no terms in the trust agreement that calls for a document, that nobody that thinks they are covered by that plan actually has any right to any sort of benefits at all because they aren't set out anywhere. Is that it? You could say that. Well, if you say that, yeah, he's going to have to repay. Well, I believe what's happening here is that the summary plan description or document is being used as an indirect vehicle to create the contractual or agreement obligation. All right, then what is in it, therefore, controls? If that is the position of the court, that was the position of the district court, then absolutely that is what has to be viewed as the agreement. Well, isn't that position rather necessary for your client to be entitled to any benefits at all? I mean, if you prevailed on it not being the plan, then somebody's going to be looking to you, your client, to pay back the money he got. Exactly. Absolutely, absolutely, and that is the alternative position. Well, all right, so the question is do you pay it back because there isn't any plan or do you pay it back because of subrogation? It's the same $35,000, isn't it? It is. What the Supreme Court, as I understand it, has pronounced is that if there is not a plan document and the terms are not in that plan document, they cannot be included in a summary plan description to be the enforceable docket. Now, what case says that? Well, I believe that is Amara has pronounced that. I believe most recently McCutcheon has. Well, aren't we back to there's no plan and your client's entitled to no benefits if that's the proper interpretation of the law? Well, I suppose putting aside the argument about the summary plan description not being the agreement, let's concede for purposes of argument that that is the agreement that's going to govern here. Okay, now we're getting somewhere. It's not dispositive of the case. All right. Tell us how you win if the SPD is considered the plan. Absolutely, absolutely. The starting point, obviously, is what is the controlling agreement, and if the controlling agreement is the summary plan description, that's what we're going to look to. And that is under document number or the record entry 1-1 and the page ID is 79 is where that starts. Not only looking at the terms of the agreement being the most important, but also looking at the history of the underlying tort case and the facts that we've produced in evidence here, the facts that are unrefuted. At the time that Mr. Moore was pursuing his tort claim, the plan hired a lawyer, filed an intervening complaint against the Hamilton County defendants in the tort case, and they were pursuing their right of subrogation against Hamilton County. They were not pursuing a right of reimbursement against Mr. Moore. So that's the landscape that we were operating under. When you look at the other party liability claims that are at page ID number 79, the language provides amounts that have been recovered by a covered person from another party are assets of the plan by virtue of the plan's subrogation interest and are not distributable to any person or entity without the plan's written release of its subrogation interest. That's the first sentence. However, starts the second sentence, amounts recovered by such covered person from another party in excess of benefits paid by the plan are separate property of such covered person. Now given the framework of the tort case, the plan has hired a lawyer. The plan has intervened into the case. The plan has filed a motion to strike the immunity defenses of the tort defendants. The plan participated in mediation in its own room separate from Kyle Moore to negotiate its own claim. When mediation was unsuccessful and Mr. Moore approached the plan, let's attack this as a united front. Let's do this together. He was thwarted and told no. We are pursuing our own separate claim. You're pursuing your own separate claim. Good luck. And that's what Mr. Moore did. That was the circumstances that existed at the time Mr. Moore resolved his case. Mr. Moore wasn't trying to cheat anyone or concoct any kind of scheme. Well, the plan was probably not trying to do anything nefarious either. They just wanted to protect their interest in the medical amount that they had provided in medical benefits. And that's what they were doing. And they were allowed to intervene into the case, and that's what they did. Okay. And when Mr. Moore resolved his case, he preserved their right to do that. The briefing of the immunity issues was well underway. So wait a minute. He walks away with $500,000. Is that right? That was the gross settlement, yes. And that's the settlement. And in what way did he protect the plan's right to $35,000 of that? The plan was seeking its own $35,000 in benefits paid. Well, the subrogation cases are typically the subrogation interest is to protect the party who's seeking subrogation's interest in whatever the party who's seeking to impose liability may recover, right? I mean, that's a standard. That's why they're in the litigation, right? The plan is in the litigation. But if there had been, say, an ultimate jury verdict in the case, the verdict wouldn't have been X to the plan and Y to Mr. Moore. It would have been an overall amount to Mr. Moore in which the plan would have had a subrogation interest. Not necessarily. Well, I mean, I don't know. It was a long time ago that I was a state judge. It's a long time ago that I've thought about any of that. But that's just the way I remember. Is it done differently? It is, Your Honor. It is. Typically, when the subrogated carrier is involved in the case and they're pursuing their own claim, their subrogated interest, the plaintiff, the other plaintiff, because there are two plaintiffs pursuing parallel cases, the other plaintiff is pursuing what they have standing to pursue, the medical expenses that weren't paid, the pain and suffering. Well, they have standing to pursue. The injured party has standing to pursue the whole thing. It's just that the plan has an interest in whatever he recovers. Isn't that the standard conceptualization? Not necessarily. In a case like this, this is a plan that was claiming that the federal law preempted the state law. The plan's ability to recover only arose if Mr. Moore recovered. Potentially. Mr. Moore didn't have to pay them back if they didn't recover anything, if he didn't recover anything. Well, to go back to your question before that, when the case is being tried and there's going to be jury interrogatories given to the jury, a lot of times the subrogated carrier has their own interrogatory. There's the number that the jury is saying, we believe that those medical expenses you paid, you're entitled to. It's their claim to make. The other plaintiff, here's what we believe that you are entitled to for your pain and suffering or medical expenses that weren't paid. We did not, we weren't an ERISA carrier to be able to claim preemption or to be able to remove a case to federal court. That's kind of beside the point, isn't it? I mean, the situation here is that your client tried to defeat the subrogation interest by his agreement with the party upon whom liability was imposed. And the question really is, at the end of the day, whether he can do that. We didn't defeat it. Clearly, the written settlement agreement that is part of the record in this case, it's an exhibit to Mr. Goodson and Mr. Barbier's affidavits, part of the record, document 48-3 and dash 4. We preserved their right of subrogation. As a matter of fact, the lawyer for the county said, planned. So why are we here now? We're here now because the plan, for whatever reason, unbeknownst to us, because we've not been able to discover why, dismissed the state tort claim. Probably because its position was it had a subrogation interest in what you'd already recovered, despite whatever you said in the contract. I think your time's up, and let's hear from... Thank you. Thank you. Good morning. My name is Basim Hadi. I'm with the law firm of Gibson and Sharps. I represent the Board of Trustees, who is the appellant, and they are the fiduciary and plan administrator for the National Elevator Industry Health Benefit Plan. I'd like to briefly touch upon the issue that was discussed about whether the summary plan description is a controlling plan document. It is true that there is not one single document for the plan that reflects all of the information for what a written instrument is required to have under ERISA. But the reason for that is, like many health plans, they use multiple documents that interrelate, that satisfy all of those written requirements. Well, if you're a good ERISA lawyer, you might go back to your client and suggest that they sort of put this in at least what appears to be traditional order and not leave themselves open to litigation over a simple question like, is this a plan or isn't it? And if it isn't, where is the plan? Et cetera, et cetera. Just my little piece of advice for the day. Sure. I appreciate that, Your Honor. I guess to respond to that, the trust agreement that's cited in the record, that satisfies some of the written requirements, which the defendants point out in their brief. And we acknowledge it satisfies three of the four factors, but the fourth factor specifically, that the basis on which payments are to be made to and from the plan. Right. And that's what the employees are interested in. And, you know, so maybe you need a plan. That's all I'm saying. Sure. That's not reflected in the trust agreement. But in Article VII, it does say a separate document would be created to reflect that. And that document is the summary plan description, as other courts have pointed out, as well as the district court in this case. The summary plan description is the one and only document for the plan that sets forth all the terms and conditions and rights and eligibility requirements for any and all members of the plan. Well, it might be helpful if it either said so or if it refers to another document, it might be helpful if there was another document. Well, that's our response. I don't think, I mean, really, this is not a good use of your time. We're just, I mean, I'm tweaking you.  All right. The line of questioning I was pursuing with Ms. Day toward the end, could the plan have not dismissed its case and recovered independently of the party who ultimately paid the settlement? I don't believe so. I believe well-settled Ohio law provides that a subrogation claim of whether it's an insurer or a health plan. It doesn't lie against the tort fees. It lies as an interest in proceeds that may be obtained by the plan beneficiary. I believe the term is derivative. It is derivative of the insurance or the plan number's claim, which is primary. It is dependent upon it. So you had no choice but to dismiss your case? That would be your position? Right, because it was derivative, and once it was resolved through the settlement, whether they choose to acknowledge this or not, the subrogation would have been resolved with that as well. Moreover, federal Well, if they did, in the settlement, preserve the subrogation right that the plan had, the next thing that should have happened was a check for $35,000 from Mr. Moore to the plan. Am I right? Absolutely, the date of the settlement, because the settlement occurred on the Friday before the trial was supposed to begin. I had called opposing counsel about the status of what was happening if there were negotiations going on, and it was at that time we were advised that it was settled, but that they were not going to repay us anything. There was a brief discussion about the plain language, and basically we were told that they were not going to honor that. So at that point, a reimbursement claim under ERISA had accrued. It did not accrue before any settlement for the reimbursement claim to accrue as recognized in federal law. There had to be a settlement or an award or something, a jury verdict. So the reimbursement claim could not have been brought against Mr. Moore before the settlement because it had not existed yet at that time. So that brings me to the next point, is what the proper interpretation of the other party liability claims provision is. In the defendant's brief, they attempt to, in our judgment, splice words and take them out of context. But we believe that if you review the text of the entire clause, starting with the caption, other party liability claims, there's nothing in there that says that there has to be an adjudication of liability of the released tortfeasor. The claim in itself was the bringing of a common law negligence claim in state court. Then if you turn to the text of the provision, and I believe the defendants acknowledge this in their brief, it talks about recovery from any party. And the definition of a party in the plain language, in the summary plain description, is a person who caused bodily injury, illness, or sickness. Now, in the underlying tort case, there was never any question that the tortfeasors had caused the accident and were driving a vehicle purportedly on an emergency call run, struck Mr. Moore, and caused a traumatic brain injury. The issue in the state court litigation before the settlement was applicability of an affirmative defense under revised code 2744. But we would submit that inherently to apply an affirmative defense, you have to be conceding that you caused the harm, caused the illness, and caused the injury. So under the reading of the plain language, when it is construed with the title, the text, and the definition of party being a person who caused bodily injury, there is no question that the district court properly interpreted this to mean that the reimbursement provision had been activated and that the reimbursement is required in this case. And very briefly, I'd like to touch upon the discovery matters that the district court and the magistrate court obviously are entitled to discretion and the questions whether they made any clear error in judgment. We submit that the issue is more or less relevancy that the additional depositions and documents that were requested going back, I believe, to the 1950s, 50 years before Mr. Moore was on this plan. He received benefits for two months in 2007. It was within the sound discretion of the district court to balance their right to discovery to build their case against what we felt was a fishing expedition and the need to protect us from what we felt was harassing and invasive discovery. So with that said, I will yield the rest of my time. Thank you. Thank you. I would just like to clarify and correct just a couple of things that were said there. What Mr. Hoddy has indicated to the court here is factually incorrect, and a lot of what was said isn't in the record. We absolutely preserved the plan's right to pursue its subrogation claim. We did nothing to— Who is it supposed to pursue it against? Pursuing it against the county, against the county defendant. They were a plaintiff in the case pursuing their right of subrogation against the county defendant, and we preserved that. We did not release it. We didn't harm it. And I just want to— Are they supposed to—what is the basis of liability, the arguable basis of liability for the county? The arguable basis of liability for the county? They've been— To pay the subrogation claim? Is that what you're referring to? Yeah. Because they acknowledged in Mr. Barbier's affidavit that's part of the record in this case, he says in paragraph 15, I believe that defendants would have prevailed on their immunity defenses against the plan. However, if defendants would have lost, if the Hamilton County defendants had lost, my clients were prepared to pay on their claim. He had their money and said, you prevail on your subrogation claim that you're entitled to it because of the immunity defenses. I have your money. I have the fund of money here, and I will pay you. That's the facts. The fact that somebody's got the money to pay you doesn't mean you have a viable theory of liability against them. That was what was being briefed, and that's absolutely what had been briefed. They were saying their position was federal law preempts state law. I think we're not getting anywhere about the nature of a subrogation interest. Let me just point also to the contract or to the agreement that we're talking about. And this is on the following page, page ID number 80, that is contrary to what Mr. Hottie just said, that he was required to dismiss his subrogation claim. It says, acceptance of benefits from the plan for an illness or injury by a covered person constitutes authorization for the plan to sue, compromise, or settle in the covered person's name or otherwise. The plan absolutely had authority to go forward and make its subrogation claim. And the county was there standing by ready to pay it if they prevailed. The separate and excess language contained that I read earlier on that says- So you're saying that the county should have, when the settlement occurred, the county should have deducted $35,000 from the $500,000 and cut two checks instead of one? Well, they just maintained a fund. So the plan is supposed to go to court on behalf of your client and prove in court the liability of the county? Is that the way you see it happen? It didn't get that far. Well, what authority, what case law can you cite me in which that's what happened? And what authority can you cite me that the provision you cite is interpreted to mean that the plan can sue a tortfeasor on the beneficiary's behalf? What else could that language mean? Acceptance of benefits from the plan for an illness or injury by a covered person constitutes authorization for the plan to sue. Compromise or settle in the covered person's name or otherwise. What else could that mean? Well, you know, you can put that in a plan, but if that's not what the law permits- Yeah, I mean, it's no way- It has no meaning at all. If nobody recognizes the right of an ERISA plan to do that, if subrogation doesn't work that way- There was no argument by the defendants in the tort case. They had intervened into the case. They were making their subrogation claim based on the ERISA statute, and they were going forward on that subrogation claim without any hindrance on our part. And again, I have to just keep going back to what else does the language mean in the other party liability claims about the excess and separate property? If this wasn't a case for that, I don't know what other set of facts could be. I believe your time's up. We thank you both for your arguments, and we'll consider the case carefully. Thank you.